**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

THOMAS J. ALSTON,

    Plaintiff,

v.

PNC BANK, N.A.

    Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Civil No. 23-1230-BAH

## <u>MEMORANDUM OPINION</u>

Plaintiff Thomas Alston filed this lawsuit in circuit court in Prince George's County, Maryland against Defendant PNC Bank, N.A., alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA"), as well as the common law tort of defamation. ECF 1-2. Defendant removed the case to this Court. ECF 1. On October 20, 2023, Plaintiff filed an amended complaint. ECF 18. Defendant timely filed a motion to dismiss on November 2, 2023, ECF 19, and Plaintiff, who is pro se, was mailed a Rule 12/56 notice the following day, ECF 20. Plaintiff's opposition to the motion to dismiss was due by December 1, 2023. ECF 20. Plaintiff did not file any opposition until January 30, 2024. ECF 24. At no point did Plaintiff request an extension or time or offer any good cause as to why he was unable to comply with the Court's deadline. *See* Fed. R. Civ. P. 6(b)(1)(B) (providing that a court may extend a deadline "for good cause" "on motion made after the time has expired if the party failed to act because of excusable neglect."). And though Plaintiff is technically pro se, he is an extremely experienced litigator with a legal background, a fact known

well to jurists across the District of Maryland.[1]  Furthermore, amidst the pendency of Defendant's

current motion to dismiss, Plaintiff filed a "Second Amended Complaint" without first seeking

leave of the Court to do so.  ECF 25.  Plaintiff's steadfast refusal to follow Court procedures,

including filing a response to Defendant's timely motion nearly two months late, leads this Court

to find that Plaintiff's opposition, ECF 24, should not be considered, and that his filing at ECF 25,

construed as a motion for leave to amend, should be denied.  *See Ball-Rice v. Bd. of Educ. of Prince*

*George's Cnty.*, Civ. No. PJM-11-1398, 2013 WL 2299725, at *5 (D. Md. May 24, 2013) ("Since

Local Rule 105.2 does not provide the consequence for a failure to meet the prescribed deadline,

it is within the discretion of the court whether to consider a late submission untimely and strike it

from the record.").  The Court now turns to the motion to dismiss.

## I.    BACKGROUND

In July 2021, Plaintiff applied for, and was subsequently approved for, a credit card issued

by Defendant.  ECF 18, at 1 ¶¶ 5–6.  Initially, the credit limit on this card was $9,000, but that

limit was reduced to $5,000 in July 2022.  *Id.* ¶ 8.  Defendant "sent a letter [to Plaintiff] that

provided purported 'reasons for the reduction [in the credit limit]."  *Id.* ¶ 9. According to Plaintiff,

"[h]owever, the reasons provided were not the [real] reasons or [were] incomplete or false." *Id.*

"Plaintiff called [Defendant] to determine the real reasons . . . but [Defendant] was unable to

provide the real reason." *Id.* at 2 ¶ 10.  When Defendant reported to the credit reporting agencies

---

[1] Thomas Alston is a non-lawyer who frequently files Fair Credit Reporting Act claims and is no stranger to this courthouse or its procedures. *See, e.g., Alston v. Fulton Bank Nat'l Ass'n*, Civ. No. 22-2596-PX, 2023 WL 8545221 (D. Md. Dec. 11, 2023); *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at *1 n.1 (D. Md. Aug. 26, 2016); *Alston v. Creditors Interchange Receivable Mgmt., LLC*, No. AW 12-1708, 2012 WL 4370124, at *1 (D. Md. Sept. 21, 2012).  Alston is so well-versed in these types of cases that defendants frequently raise the claim that he assists others in filing such cases. *See Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 621 n. 9 (D. Md. 2020).

("CRAs"), it reported only the card's $5,000 limit, without noting that the limit was formerly $9,000, resulting in an incomplete picture of Plaintiff's credit usage which caused a "10-point reduction in Plaintiff's credit scores."[2] *Id.* ¶¶ 14–16.

Plaintiff disputed his tradeline with Defendant with the CRAs. ECF 18, at 3 ¶ 20. The CRAs notified Defendant of the dispute, but Defendant "ignored Plaintiff's dispute and merely confirmed the account belonged to Plaintiff and continued reporting the account in the same manner without investigating whether it omitted pertinent credit limit history." *Id.* ¶ 23.

Defendant subsequently adjusted Plaintiff's credit limit several more times. ECF 18 at 3 ¶¶ 24–28. In March 2023, Defendant first raised Plaintiff's credit limit to $7,500 and then reduced it down to $4,100. *Id.* ¶¶ 24–25. According to Plaintiff, Defendant "did not notify Plaintiff of the credit limit decrease." *Id.* ¶ 26. In summer 2023, Defendant again decreased Plaintiff's credit limit, this time down to $2,400, and again allegedly failed to notify Plaintiff. *Id.* ¶¶ 28–29. Defendant continued to report only Plaintiff's current credit limit to the CRAs without including the history of his former credit limits. *Id.* ¶ 27, ¶ 30.

Plaintiff then filed this lawsuit, alleging violations of the FCRA and the ECOA, as well as common law defamation. ECF 18, at 3–6 ¶¶ 32–60. Defendant now moves to dismiss for failure to state a claim. ECF 19.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal

---

[2] Plaintiff claims that this reporting resulted in it appearing as if Plaintiff was "was "using 88% of his credit limit when he used the credit card." ECF 18, at 2 p 14. The Court understands Plaintiff to mean that he had used 88% of the $5,000 limit, which would have equated to a lower percentage used of the $9,000 credit limit.

conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.  ANALYSIS

Defendant claims that Plaintiff's amended complaint fails to state a claim for each of its three counts. ECF 19-1, at 13–24.  The Court will address each count in turn.

### A.    Count One: FRCA Violation

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  "The statute regulates the CRAs, and those who 'furnish' consumer data to CRAs," like Defendant. *Alston v. Fulton Bank Nat'l Ass'n*, Civ. No. 22-2596-PX, 2023 WL 8545221, at *2 (D. Md. Dec. 11, 2023) (quoting 15 U.S.C. § 1681s-2) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010)).

4

To state a claim under the FCRA, a plaintiff must plead "(1) that he [] notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 390 (D. Md. 2016) (citations omitted). Implicit in these elements is an understanding that the reported information contains an inaccuracy. *See id.* (describing "inaccurate" information).

Here, Plaintiff does not plead that the information Defendant reported was facially inaccurate—he pleads that it was *incomplete*. *See* ECF 18, at 2 ¶ 15 ("[Defendant's] reporting was *incomplete* because it did not include the *complete* credit limit history . . . ." (emphasis in original)). Plaintiff is correct that reported information can violate the FCRA through omission, but such an omission must be "'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Saunders v. Branch Banking and Tr. Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008) (alteration in *Saunders*) (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir.2001)). Plaintiff's fails to direct the Court to any case where the precise type of omission he alleges here, or even something remotely similar, was determined by a court to be of the kind of omission that could be expected to have an adverse effect on Plaintiff.

The cases Plaintiff does cite offer no help as they present vastly different scenarios of far more meaningful omissions with impacts on a plaintiff's credit worthiness. For example, in *Chaitoff v. Experian Info. Sols., Inc.*, the Seventh Circuit held that the omission by a credit bureau (Experian) of the fact that a plaintiff had successfully completed a temporary payment plan (TPP) offered by the plaintiff's mortgage lender amounted to a material omission. 79 F.4th 800, 813 (7th Cir. 2023) (cited by Plaintiff at ECF 24, at 6). The Seventh Circuit compared two hypothetical debtors, one whose credit report discloses successful TPP completion and one whose report did

not. *Id.* "The debtor without the TPP," the court noted, "has no evidence that she can make timely and complete payments, but the debtor who completed the TPP does." *Id.* at 813–14. "Because a TPP gives potential furnishers more accurate information on a consumer's creditworthiness," the Seventh Circuit concluded that "omitting it precludes 'maximum possible accuracy.'" *Id.* In contrast to the successful participation in a TPP, which could mitigate past credit issues by providing a window into a debtor's present ability to make timely payments, the omission at issue here—the bare fact of a previous credit limit—says nothing about Plaintiff's *present* creditworthiness.[3]

While Plaintiff's complaint asserts that "[t]he original credit limit and the credit limits in preceding or prior months are *normally* reported," ECF 18 at 2 ¶ 13 (emphasis added), he identifies no authority that requires such information to be reported, nor any authority that makes clear that a failure to report *prior* credit limits makes a report of only the credit holder's *present* credit limit otherwise misleading. *Cf. Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 548–49

---

[3] The other cases cited by Plaintiff provide even less support. *See* ECF 24, at 5 n.3 (citing *Mushala v. U.S. Bank, Nat'l Ass'n*, Civ. No. 18-1680 (JDB), 2019 WL 1429523, at *11 (D.D.C. Mar. 29, 2019) (finding that omitting "various relevant mitigating information—including that [the plaintiff] tried but was unable to pay off her debt because of [a defendant's] failure to provide necessary paperwork"); *Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 138 (E.D.N.Y. 2017) (finding a report in a plaintiff's credit file misleading because it stated that legal proceedings had been commenced to foreclose on a plaintiff's mortgage because the plaintiff's account was past due but omitted that the plaintiff had consented to the foreclosure "in exchange for being released from and absolved of any continuing personal liability"); *Hillis v. TransUnion, LLC*, Civ. No. 13-02203, 2014 WL 2581094, at *4 (E.D. Pa. June 10, 2014) (finding that a jury could find that the failure to note that a delinquent car loan attributed to the plaintiff was actually the responsibility of plaintiff's former spouse, and the omission of the fact that plaintiff "had an indemnification right against his ex-wife for any portion of the [] balance he was forced to repay" was misleading). Plaintiff's allegation here is not remotely similar to the alleged omissions in these cases as each of these cases present examples of information that, if omitted, are "'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Saunders*, 526 F.3d at 148. The mere fact that a debtor used to have a higher credit limit does not rise to this level.

(E.D. Mich. 2020) (finding that a plaintiff failed to demonstrate that an omission of her current monthly payment on a tradeline was misleading). To be clear, there are certain types of omissions that have generally been found to be so misleading as to be inaccurate, such as reporting a debt without reporting a meritorious dispute to that debt. *See Saunders*, 526 F.3d at 150. However, Plaintiff's bald assertion that the incomplete reporting as alleged here was "misleading" is not sufficient to make plausible an assertion that Defendant somehow created a misleading impression resulting in an adverse effect to Plaintiff. *See* ECF 18, at 2 ¶ 14; *see also Thompson*, 441 F. Supp. 3d at 548 (explaining that "[a] consumer's conclusory allegation that a report is misleading is insufficient" to demonstrate that a report is misleading). Even crediting Plaintiff's claim that prior credit limit information was normally provided to CRAs, this allegation alone is not enough to raise a violation of the FCRA. Simply because the information may have been relevant does not mean that its omission is misleading. *See Harris v. Experian Info. Sols., Inc.*, No. 6:06-CV-1808-GRA, 2009 WL 10693883, at *5 (D.S.C. June 30, 2009) ("A credit report is not 'inaccurate' simply because it does not include all relevant information about a consumer."). As such, Plaintiff has failed to state a claim for a violation of the FCRA. Count one is dismissed.

## B.    Count Two: ECOA Violation

Under the ECOA, when a creditor takes an adverse action against an applicant for credit, the creditor must provide to the applicant "a statement of reasons" as to why that adverse action was taken. 15 U.S.C. § 1691(d)(2). An "adverse action" is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." *Id.* § 1691(d)(6).

Defendant argues that the reduction in Plaintiff's credit limit is not an adverse action under the ECOA. ECF 19-1, at 20. But a reduction in Plaintiff's credit limit is clearly a "revocation of credit" or, at the very least, "a change in the terms of an existing credit arrangement." § 1691(d)(6).

7

Defendant also asserts that Plaintiff's contract with Defendant permits Defendant to alter Plaintiff's credit limit. *See* ECF 19-1, at 20 ("Plaintiff cannot allege a plausible change to the terms of an existing credit arrangement, because PNC's credit card agreement permitted PNC to 'increase or decrease [Plaintiff's] credit limit at any time.'"). But the existence of such a contract does not alter the analysis of the legality of this action under ECOA. Furthermore, the Court is constrained to reviewing the complaint itself and any documents integral thereto in considering a motion to dismiss, and as Plaintiff's claims do not arise under the purported contract, it is not integral to this case. *See Chesapeake Bay Found., Inc.*, 794 F.Supp.2d at 611.

Finally, Defendant asserts that Plaintiff's credit limit was adjusted only once and that it offered sufficient explanation of its reasons for the alteration. ECF 19-1, at 21–23. Defendant attaches multiple documents in support of this point. ECF 19-3, 19-4. Because those documents are not part of nor integral to the complaint, however the Court cannot consider them, at least at this early stage. *See Fusaro*, 930 F.3d at 248. Plaintiff clearly alleges that "Defendant did not notify Plaintiff" two of the three the times he claims his credit limit was decreased. ECF 18, at 3 ¶ 26, ¶ 29. Therefore, taking all facts pled in the complaint as true, Plaintiff's second claim, violation of the ECOA, cannot be dismissed.

### C.     Count Three: Common Law Defamation

Under Maryland law, the tort of defamation has four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 935 A.2d 719, 723–24 (Md. 2007) (citation omitted). Here, for the reasons explained above, Plaintiff has failed to plead that Defendant made any false statement that caused him harm. As such, this count, too, must be dismissed.

8

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's filing at ECF 25, construed as a motion for leave to amend, is **DENIED**.   Defendant's motion to dismiss, ECF 19, is **GRANTED in part and DENIED in part**.    Counts one and three of Plaintiff's amended complaint, ECF 18, are **DISMISSED**, but count two survives.

A separate implementing Order will issue.

Dated: August 26, 2024

_____/s/_____
Brendan A. Hurson
United States District Judge

9